UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
Plaintiff,

v.

THOMAS KELLER,
Defendant.

Case No. 18-cr-00462-VC-1

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO SUPPRESS, DENYING REQUEST FOR *FRANKS* HEARING, AND GRANTING IN PART AND DENYING IN PART MOTION TO SEAL**

Re: Dkt. Nos. 137, 231

More than three years after the government searched Keller's office and residence and only a month before the scheduled trial date, the defense filed a motion to suppress and requested a *Franks* hearing. *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). That motion is granted in part and denied in part.[1]

Keller has not made a substantial preliminary showing that Special Agent Krieg intentionally or recklessly misstated or omitted material facts in the warrant affidavit. *See United States v. Stanert*, 762 F.2d 775, 780 (9th Cir. 1985). Even if some of the information in the affidavit was incorrect or misleading on the margins, the defense has not pointed to anything that indicates those misstatements or omissions were intentional or reckless. And even if they were,

[1] The government's motion to file Exhibit A of the Green Declaration in Support of Gov. Opp., Exhibits A and B of the Madore Declaration in Support of Gov. Opp., and Exhibit A of the Krieg Declaration in Support of Gov. Opp. is granted in part and denied in part. The Madore and Krieg exhibits contain personal identifiable information and sensitive medical information of Keller's former patients and therefore are sealable. But the defense has already filed parts of the Green exhibit, the search warrant application, on the public docket. *See* Dkt. No. 138, Ex. A. Because very little of that document contains sensitive information, the parties are ordered to confer and file a redacted version within 7 days of the date of this order.

the affidavit, supplemented by the alleged omissions and without the alleged misstatements, contained more than enough information to establish probable cause. *Id.* at 782.

There is no question that the affidavit included sufficient information to create probable cause of over-prescription. While some of the information is independently innocuous, or consistent with a legitimate medical practice, "innocent behavior frequently will provide the basis for a showing of probable cause." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018) ("Our precedents recognize that the whole is often greater than the sum of its parts—especially when the parts are viewed in isolation." (citing *United States v. Arvizu*, 534 U.S. 266, 277–78 (2002))). A legitimate doctor could have prescribed the large volumes, high dosages, and high-risk combinations of controlled substances Keller did. But the Ninth Circuit has explicitly linked that behavior with criminal conduct: "[U]ncharged prescriptions of controlled substances in enormous quantities, and in dangerous combinations, support a reasonable inference that the underlying prescriptions were issued outside the usual course of professional practice and without a legitimate medical purpose." *United States v. Lague*, 971 F.3d 1032, 1040 (9th Cir. 2020). This inference, combined with the Medicare data concerning Keller's prescription of Subsys, the undercover agent's visit to the practice, Dr. Munzing's expert opinions, and the statement of a former patient, more than add up to probable cause. The fact that the government's current expert did not support charges relating to some of Keller's other patients is immaterial, as the expert did not opine on the facts of this case until almost three years after the warrant application was filed.

The affidavit may not have established probable cause of healthcare fraud. But even if it did not, the good-faith exception applies because the searching agents reasonably relied on the warrant. *See United States v. Crews*, 502 F.3d 1130, 1137–38 (9th Cir. 2007). Given the extensive information constituting probable cause of over-prescription, the warrant was not "so lacking in indicia of probable cause that no reasonable officer could rely upon it in good faith." *Id.* at 1136. And, as previously mentioned, the affidavit was not materially misleading. This argument was not waived, as the government raised it in its opposition and addressed it in the

court-ordered letter brief requested on this subject.

The warrant affidavit also established probable cause of a nexus between over-prescription and Keller's residence sufficient to support the search and seizure of medical records and notes. To support that connection, the affidavit relied on the fact that Keller received financial and Medical Board documents at his home address and regularly drove between his home and office, an agent once saw him leave the office with a "briefcase type bag" and drive to his home (although the agent did not see whether he entered the home with the briefcase), and the agent's experience that physicians who over-prescribe tend to bring medical records home. Probable cause determinations may take into account common-sense inferences and be based on the training and experience of agents. *See, e.g.*, *United States v. Seybold*, 726 F.2d 502, 504 (9th Cir. 1984). The Court sees no reason to doubt Special Agent Krieg's experience, along with the additional, albeit limited, evidence set forth in the warrant. It is commonsensical that doctors, and perhaps especially doctors who commit crimes and wish to shield their activities from their colleagues or potential inspectors, bring medical records home, just as those in other professions do.

Finally, Keller argues that his personal journal and letters to his sister were outside the scope of the warrant and therefore not properly seized. The letters were outside the scope of the warrant. Even a quick skim shows they do not relate to "(1) the prescribing, dispensing, or other distribution of any controlled drug or to any person to whom a controlled substance was prescribed or dispensed; (2) the submission of any billing to Medicare; [ ] (3) the receipt of payment of any compensation in exchange for the act of writing or filling a prescription to a Medicare beneficiary" or any other category of documents listed in Attachment B of the warrant application.

Whether the seizure of the journal was appropriate is more difficult given the relative illegibility of Keller's handwriting. But "[t]he general touchstone of reasonableness . . . governs the method of execution of the warrant." *United States v. Ramirez,* 523 U.S. 65, 71 (1998). Given that the journal was difficult to decipher, it is not clear (as Keller argues) that the seizing

agent was limited to quickly perusing the document to determine whether it fell within the scope of the warrant. But even if he was limited to a quick perusal, patient names and medical terms are discernible in a quick flip through the journal's pages. The agent need not have been able to read every word on every page to identify terms that made the journal fall within the scope of the warrant.

**IT IS SO ORDERED.**

Dated: November 16, 2021

VINCE CHHABRIA
United States District Judge