UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>           Plaintiff,<br>      v.<br>THOMAS KELLER,<br>           Defendant. | Case No. 18-cr-00462-VC-1<br><br>**ORDER RE DEFENSE'S SECOND MOTION IN LIMINE**<br>Re: Dkt. No. 194 |

      This order summarizes the Court's current rulings regarding the testimony of Lauren McNulty. As a reminder, a ruling on a motion in limine may be revised at trial. *See City of Pomona v. SQM North America Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017).

      The total morphine equivalent charts, including the charts that convert those raw numbers into Oxycontin 30 mg pills, are excluded under Rule 403. McNulty may testify to Keller's prescription volume standing alone, which is clearly probative of his intent to overprescribe. But the comparison charts risk misleading the jury because they do not take into account the correlation between doctors' practice size and total prescription volume. Limiting the comparison group to doctors who prescribed opioids to at least 50 Medicare beneficiaries does little to alleviate this concern. Even with that limitation, for example, Keller prescribed opioids to more patients than 90% of that group.

      McNulty's charts comparing Keller's per-patient per-day morphine equivalent with California oncology practitioners and California pain, anesthesiology, and addiction practitioners are admissible. Comparing average per-patient dosages mitigates the concern about the impact of practice size on prescription volume. And the pain group, although imperfect, is an apt

comparator, as Keller's specialty is listed in the dataset as "pain management." At first glance, the comparison to oncology practitioners also seems appropriate because some cancer patients require opioid prescriptions to treat their pain. Keller has not made a showing sufficient to significantly undermine the probative value of comparing him to this group. But the chart comparing Keller's per-patient per-day morphine equivalent with all California practitioners who prescribed opioids to at least 50 Medicare beneficiaries is excluded under Rule 403. The patients treated by doctors of all specialties are qualitatively different than the patients treated by pain management specialists and oncologists, who are more likely to have ailments that require significant opioid prescriptions. Comparing Keller's prescriptions to that group risks misleading the jury.

The chart comparing the percentage of Keller's Medicare beneficiaries who were prescribed opioids with the percentage of Medicare beneficiaries prescribed opioids by pain, anesthesiology, and addiction specialists is admissible. That comparison is apt, and therefore probative of Keller's intent to overprescribe, for the reasons described above and is not outweighed by any of the 403 factors. But the charts comparing Keller's opioid-recipient percentage to oncology practitioners and all California practitioners is excluded under Rule 403. The nature of the average doctor or oncologist's practice, specifically how many of their patients require opioid prescriptions to treat severe or chronic pain, is significantly different from a pain specialist's practice. So comparing Keller to those groups risks misleading the jury.

**IT IS SO ORDERED.**

Dated: November 29, 2021

_____
VINCE CHHABRIA
United States District Judge