UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>THOMAS KELLER,<br><br>        Defendant. | Case No. 18-cr-00462-VC-1<br><br>**FURTHER RULINGS ON MOTIONS IN LIMINE**<br><br>Re: Dkt. No. 176, 177, 189 |

      In this order, the Court rules on the overlapping issues relating to uncharged patients: whether former patients J.S. and S.W. may testify at trial (Government's Motion No. 2 and Defense's Motion No. 7), whether A.R. may testify about her experience as Keller's patient unrelated to the healthcare fraud count (same), and whether Dr. Szabo may opine on the medical appropriateness of Keller's treatment of uncharged patients on direct (Defense Motion No. 8).

      It is a close question whether J.S. and S.W.'s testimony, and A.R.'s testimony unrelated to the healthcare fraud count, is admissible for a non-propensity purpose under Rule 404(b). If Dr. Szabo testifies about S.W.'s medical treatment, presumably S.W.'s testimony would have a legitimate non-propensity purpose: Dr. Szabo's opinion that Keller overprescribed controlled substances to S.W. would be probative of Keller's intent and/or lack of accident in over-prescribing to A.M., and S.W.'s testimony about her treatment would support Dr. Szabo's conclusion. By contrast, the government apparently does not plan to offer expert testimony that Keller similarly overprescribed to J.S. Instead, it appears to offer J.S.'s testimony as part of an effort to show that Keller was careless in his prescribing habits and dismissive of, or downright hostile to, his patients. And the government's expert would testify that A.R.'s treatment, while misguided, was medically

defensible. So it is more difficult to articulate a non-propensity purpose for the proposed testimony of J.S. and A.R.

But the Court need not reach a definitive conclusion about whether the testimony of J.S., S.W., and A.R. qualify for admission under Rule 404(b), because their testimony (on the current record) is excluded under Rule 403. Whatever probative value their testimony may have is substantially outweighed by the great risk of confusing the issues and causing "other acts" evidence to overwhelm the evidence relating to the charged crimes. If their testimony was permitted, the defense would presumably be entitled to rebut it by calling any number of Keller's patients who received medically defensible prescriptions and were satisfied with his services, causing the proceeding to devolve into a series of mini trials about the medical appropriateness of Keller's treatment of each uncharged patient. Moreover, without any strong indication that the defense intends to portray Keller's prescriptions to A.M. as anomalous or accidental, this testimony is needlessly cumulative of the other 404(b) evidence of Keller's intent the Court has already permitted.

Of course, there is a significant possibility that the defense could open the door to this evidence during trial. For example, if Keller's attorneys present evidence or suggest during opening statements or through questioning that Keller's treatment of A.M. was anomalous (or if they say anything that would raise concerns in the jury's mind about why the government has not presented evidence about Keller's treatment of other patients), the testimony of these uncharged patients would likely be admissible to correct that misimpression. *United States v. Osazuwa*, 564 F.3d 1169, 1175 (9th Cir. 2009) ("In a criminal prosecution, the government may introduce otherwise inadmissible evidence when the defendant 'opens the door' by introducing potentially misleading testimony." (citing *United States v. Beltran-Rios*, 878 F.2d 1208, 1212 (9th Cir. 1989))).[1]

Even if that occurs, some parts of J.S. and S.W.'s proposed testimony, including their description of Keller's temperament during their patient visits, their perception of the patients who

---

[1] Relatedly, if Keller calls a former patient to testify that he was meticulous and thorough in his examinations and had an excellent bedside manner, Rule 404(a)(2)(A) would presumably permit the government to admit J.S., S.W. and/or A.R.'s testimony as rebuttal character evidence.

visited Keller's practice, and the rock-bottom moments that forced them to confront their dependence on the drugs Keller prescribed, would still be excluded under Rule 403. Those details have such negligible (if any) probative value to the issues in this case that their introduction would only serve to unduly inflame the jury.

Along the same lines, Dr. Szabo may not (on the current record) opine about the medical appropriateness of Keller's treatment of uncharged patients on direct. His opinions that Keller over-prescribed to other patients around the time A.M. was a patient is probative of Keller's intent, absence of mistake, and lack of accident in over-prescribing to A.M. But permitting that testimony would present similar risks of confusing the issues and causing Rule 404(b) evidence to overwhelm the evidence relating to the charged crimes.

Of course, Keller is entitled to cross examine Dr. Szabo about his change of opinion regarding the medical appropriateness of Keller's treatment of two other patients. That is probative of Dr. Szabo's credibility as an expert and the reliability of his opinion of A.M.'s treatment. But if Keller goes down that path, Dr. Szabo will be permitted to provide a full and detailed description of his evaluation of those patients. And for the reasons stated above, this could open the door to testimony from S.W.

**IT IS SO ORDERED.**

Dated: December 14, 2021

_____
VINCE CHHABRIA
United States District Judge