UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>THOMAS KELLER,<br><br>  Defendant. | Case No.  18-cr-00462-VC-1<br><br>**ORDER RE CURES CHARTS**<br>Re: Dkt. No. 351, 354 |

This order summarizes the Court's rulings on the CURES summary charts (Government's Amended Motion 1 and Defense's Amended Motion 3).

The CURES charts unrelated to A.M. prepared by government expert Paul Short (Charts 1, 3, 4, 5, 7, 9, 11, 12, and 14) are excluded under Rule 403.[1] Those charts are probative of Keller's absence of mistake and lack of accident in prescribing certain drugs, drug combinations, and dosages to A.M. But that probative value is diminished by his assertion that he will not argue or imply mistake/accident at trial. Whatever probative value remains upon learning that Keller will not argue accident or mistake is substantially outweighed by a risk of prejudice to Keller, wasting time, and confusing the issues.

Aggregate statistics about Keller's entire medical practice are not helpful to the jury without additional context. The context the government's experts purportedly will provide is not sufficient to increase their relevance and change the 403 calculus here. For example, the fact that 76% of the controlled substances Keller prescribed were on Schedule II means nothing to a jury

---

[1] The parties have worked out their disagreements about the charts related to A.M. (Charts 2, 6, 8, 10, and 13), and the government has withdrawn Chart 15.

(or to this Court) without knowing whether that is typical for other doctors in Keller's peer group. *See* Chart 1 (Exhibit 103). The same is true of the chart purporting to show that Keller routinely prescribed the Holy Trinity to his patients. *See* Chart 7 (Exhibit 115). Knowing that Keller prescribed the Holy Trinity to 74 patients means very little unless that volume of prescriptions (and not the prescription itself) was unusual. Given its minimal probative value, introduction of this data risks tempting the jury to convict Keller based on his perceived propensity for inappropriately prescribing controlled substances to many patients in his practice.

Perhaps if the government were pursuing charges against Keller based on prescriptions to multiple patients who share similar red-flag characteristics, this data would be more probative and less prejudicial. But when the charges relate only to a single patient, the charts' minimal value in showing lack of accident or mistake does not outweigh the potentially serious risks that may result from their introduction. Consistent with that principle, the government may offer expert opinions of over-prescription red flags and whether Keller's prescriptions to A.M. implicate them.

It is important to note that these charts are materially different from the Medicare charts prepared by a different government expert, McNulty, that the Court has already ruled admissible. *See* Dkt. No. 253. Those charts are probative because they compare Keller's practices to appropriate groups of California practitioners to illustrate that his prescription practices generally were outside the course of professional practice. That fact, in turn, makes it more likely that he intentionally acted outside the course of professional practice in prescribing to A.M.

To the extent the Court stated that McNulty could testify to Keller's total prescription volume in MMEs or the equivalent number of Oxycontin 30 mg pills in isolation (without reference to a comparison group), the Court now retracts that statement. Keller's prescription volume standing alone is a number without meaning to the jury and therefore holds little probative value that is substantially outweighed by a risk of confusing the issues and wasting time. *See* Fed. R. Evid. 403.

Of course, this calculus may change during trial. The defense would presumably open the

2

3

door to the admission of these charts for, by example, suggesting that Keller acted accidentally or mistakenly in prescribing to A.M. *See City of Pomona v. SQM North America Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017).

**IT IS SO ORDERED.**

Dated: January 27, 2022

_____
VINCE CHHABRIA
United States District Judge